**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**BRANDON GRINDLE**                                                **PETITIONER**

**v.**                                                **NO. 2:14-cv-197-KS-MTP**

**LEPHER JENKINS**                                                **RESPONDENT**

### REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Brandon Grindle for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Having considered the submissions of the parties, the record of the state court proceeding, and the applicable law, the undersigned recommends that the Petition [1] be DENIED.

### FACTS[1] AND PROCEDURAL HISTORY

Charles Brown was walking down the street in front of his house when he was shot twice by the driver of a green Ford sport utility vehicle.  When officers arrived, Brown was still conscious but bleeding heavily.  Paramedics transported him to the hospital while officers remained at the scene to interview witnesses.

After interviewing several witnesses, officers determined there had been "bad blood" between Brown and Petitioner Brandon Grindle.  Brown's girlfriend, with whom he had a child, was also the mother of Grindle's daughter.  Grindle believed Brown was mistreating his young daughter.  A month earlier, the two fathers had gotten into an argument during which Brown had purportedly pulled a gun on Grindle.  On the day of the shooting, however, it was Grindle who

---

[1] The factual summary is taken from the Mississippi Court of Appeals's opinion affirming Petitioner's conviction. *See Grindle v. State*, 134 So. 3d 330 (Miss. App. 2013).

1

had a gun.

Although the actual pistol used to kill Brown was never recovered, two different witnesses testified that on the day of the shooting they saw Grindle riding around in a Ford SUV with a pistol.  One of these witnesses, Michael Smith, Grindle's daughter's uncle, was flagged down by Grindle.  The two got into a fight about Brown.  Smith testified that Grindle reached behind his seat, grabbed a gun, and put it in his lap.  Another witness, Terrell Cruz, claimed to have been riding around with Grindle in the SUV earlier that day.  He also testified that Grindle had a pistol in the SUV, which he described as a .45 caliber–the same caliber pistol used to shoot Brown.

Two other witnesses who were in the vicinity of the shooting testified at trial.  Oscar Walker saw Grindle drive by in a green Ford Expedition fifteen minutes before the shooting.  Walker described hearing gunshots, then seeing the same Ford vehicle drive away.  Rashad Newton was also near Brown when he was shot.  Newton testified that he saw Grindle's vehicle pull up to Brown and saw Brown start backing away.  Shots were then fired from Grindle's vehicle, hitting and ultimately killing Brown.

While a variety of witnesses implicated Grindle as the killer, Grindle primarily focused his direct appeal on Officer Richard Browning, the responding officer who interviewed Brown in the emergency room.  The victim, Brown, was intubated at this point and could not speak, but Officer Browning, who was familiar with Brown and Grindle from their prior run-in, testified that he was able to ask Brown a series of questions to which Brown responded by nodding his head affirmatively.  The questions were aimed at identifying the shooter.  According to Officer Browning, when he asked Brown if Grindle was the person who shot him, Brown emphatically

2

nodded "yes."  Shortly after this exchange, Brown died from his wounds.

After a day of being sought by the police, Grindle turned himself in.  He was charged with killing Brown by deliberate design without authority of law–i.e., "first degree murder." Miss. Code. Ann. § 97-3-19(1)(a)(Rev. 2006).

On October 21, 2011, Petitioner was convicted of murder in the Circuit Court of Marion County, Mississippi. (State Court Record [9-1] at 68-69.)  Petitioner was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections.

On December 19, 2011, Petitioner, through counsel, appealed his conviction to the Mississippi Supreme Court, raising the following grounds for relief:

1.   The trial court erred by admitting the alleged dying declaration of Charles Brown over the objection of Grindle based on the fact that the deceased only "nodded" his head while he was near death and not conscious.  The admission of the statement was a violation of the Sixth Amendment right of confrontation and reviewable under plain error.

2.   Mr. Brandon Grindle was denied a fundamentally fair trial by the introduction into evidence of irrelevant, inflammatory and prejudicial matter thereby violating substantive due process under the U.S. and Mississippi Constitutions.

3.   The Court erred by granting state instruction number 6 which allowed the jury to infer malice from the use of a deadly weapon.  A due process violation occurred as the state was not required to prove all elements of the crime of murder in violation of *In re Winship*.

4.   The Appellant's counsel erred by offering instruction No. 10 because this instruction is a forbidden comment on the testimony of a witness or a witness's interest in a trial, and it is a latent but obvious comment on the accused's silence.

5.   The prosecutor committed reversible error by appealing to the conscience of the jury when referencing the Florida Casey Anthony trial and the California O.J. Simpson trial.

6.   Petitioner's counsel introduced testimony of a separate and distinct criminal charge facing Grindle that was irrelevant to the trial of the issue before the court; his counsel failed to object in one instance to an improper instruction and offered

an instruction which has been held improper many times by this court; trial
counsel raised serious issues of possible jury tampering and misconduct but put
forth no evidence; counsel failed to object to an improper prosecutorial argument
thereby rendering ineffective assistance of counsel.

([9-1] at 79; [9-7] at 52-53.)  On August 27, 2013, the Mississippi Court of Appeals affirmed

Petitioner's conviction and sentence in a written opinion. *See Grindle v. State*, 134 So. 3d 330

(Miss. App. 2013), *reh'g denied* December 3, 2013, *cert. denied*, March 20, 2014.  The court of

appeals, however, held that Petitioner's claims of ineffective assistance of counsel were more

appropriate for a motion for post-conviction relief because the record was "not as developed as it

would be in a post-conviction-relief proceeding." *Id.* at 350.

On August 15, 2014, Petitioner sought leave from the Mississippi Supreme Court to file

his motion for post-conviction collateral relief in the trial court in which he asserted the

following grounds (as stated by the *pro se* petitioner):

1.  The assistance provided by the attorney representing petitioner at trial and in his
    direct appeal was inadequate and resulted in a substantial prejudice to petitioner
    because the attorney failed to develop evidence that Grindle was denied his
    constitutional right to a fair trial and that Grindle was guilty of no crime greater
    than manslaughter.

2.  Petitioner was afforded ineffective assistance of counsel by the attorney who
    represented him at trial where counsel failed to adequately challenge the state's
    evidence and failed to properly investigate the factual events.  Defense counsel
    abandoned defendant's self-defense claim without petitioner's agreement and
    over petitioner's objections.

3.  Petitioner was provided with ineffective assistance of counsel where counsel
    failed to pursue a self-defense, as an independent issue, at trial and on direct
    appeal.  Grindle was not guilty of deliberate design murder.  If it was not self-
    defense which caused Cain's[2] death it certainly was not murder.  Grindle should
    have been found guilty of nothing in excess of manslaughter.

---

[2] The undersigned presumes that Petitioner was referring to Charles Brown.

4

4.      Petitioner was denied effective assistance of counsel's action of failing to raise *Batson* issues at trial and on direct appeal when the prosecutor used peremptory challenges to strike members of petitioner's race and failed to provide non-racial reasons.  Such actions constitute a denial of effective assistance of counsel in violation of the 6th Amendment to the United States Constitution.

5.      The cumulative effect of the ineffectiveness of counsel deprived Petitioner Grindle of his constitutional right to a fair trial and an effective direct first appeal, in violation of the 5th and 6th Amendments to the United States Constitution.

([9-8] at 3; 48-49.)

The Mississippi Supreme Court denied Petitioner's application stating,

Petitioner alleges that he received ineffective assistance of counsel.  The panel finds that Petitioner's allegations of ineffective assistance of counsel lack sufficient merit to warrant an evidentiary hearing. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The Application for Leave to File Motion for Post Conviction Collateral Relief should be denied.

([9-8] at 2.)

On December 15, 2014, Petitioner filed the instant Petitioner for writ of habeas corpus,

asserting the following grounds for relief:[3]

Ground 1:      Ineffectiveness of trial and appellate counsel.

i.      Trial and appellate counsel failed to investigate and develop evidence that Petitioner was denied a fair trial and was guilty of no crime greater than manslaughter and failed to challenge the State's failure to prove malice;

ii.     Trial and appellate counsel failed to raise a self-defense argument;

iii.    Trial and appellate counsel failed to raise an argument based on *Batson*;

iv.     The cumulative effect of the ineffectiveness of trial and

---

[3] Due to the repetitive nature of Petitioner's claims, the grounds for relief are summarized from his Petition [1].

appellate counsel.

Ground 2:      Petitioner was denied due process when trial court admitted victim's dying declaration.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires the exhaustion of a claim in state court before a federal court may consider the claim as part of a habeas petition. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Respondent concedes that Petitioner has satisfied the exhaustion requirement for the grounds raised in his federal petition by first giving state courts the opportunity to consider and pass upon the challenges to his conviction. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). These claims were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d).[4]

Section 2254(d) provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

---

[4] The Mississippi Supreme Court's denial of Petitioner's post-conviction relief, even without an explanation, may be presumed as an adjudication of the merits. *See Diver v. Cain*, 698 F.3d 211, 216-17 (5th Cir. 2012).

The "contrary to" clause applies when the state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause applies when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08. The "unreasonable application" inquiry is based on an objective standard, and "unreasonable" does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S.86, 102-03 (2011) (internal quotations omitted). A federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

**Ground 1: Ineffective Assistance of Counsel**

In Ground 1 of his Petition, Petitioner argues that his trial and appellate counsel provided him ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured. Pursuant to *Strickland*, Petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. at 687; *see also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's acts "fell below an objective

standard of reasonableness").  In order to establish a deficiency, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*.  This Court's "scrutiny of counsel's performance must be highly deferential" and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689; *see also Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998) (observing that the court "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotations and citations omitted).

"To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)).  Further, Petitioner must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).  An ineffective assistance of counsel claim must be stated with specificity. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  Summarily reciting general complaints about counsel's performance without discussing their specific basis or how application of the law purportedly justifies relief does not state a claim for habeas review. *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.")

In considering Petitioner's application for post-conviction relief, the Mississippi Supreme

Court reviewed the claims of ineffective assistance of counsel and determined that Petitioner failed to meet his burden of establishing ineffective assistance of counsel. ([9-8] at 2.)  Given that the ineffective assistance of counsel claims before this Court present a mixed question of law and fact[5] and that *Strickland* is the "clearly established Federal law" which governs such claims, the issue in this case is "whether the Mississippi Supreme Court's decision to reject [Petitioner's] ineffective assistance claim[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland.*"  *Neal v. Puckett,* 286 F.3d 230, 236 (5th Cir. 2002).

<u>*Manslaughter Instruction/Proof of Malice*</u>

In his first allegation of ineffective assistance, Petitioner contends that his trial counsel rendered ineffective assistance by failing to pursue a manslaughter instruction and failing to challenge the State's failure to prove malice.  He also asserts that appellant counsel rendered ineffective assistance by failing to pursue these issues on appeal.  The record, however, demonstrates that Petitioner is not entitled to habeas relief on this ground.

Petitioner was convicted of deliberate design murder which is defined as "[t]he killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder . . . ." Miss. Code Ann. § 97-3-19(1)(a).  Manslaughter, however, is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss. Code

---

[5] *Nixon v. Epps,* 405 F.3d 318, 324 (5th Cir. 2005).

Ann. § 97-3-35.  Thus, the absence of malice is the vital distinction between "heat of passion" manslaughter and murder.

The Mississippi Supreme Court has held that a defendant has a right to an instruction on "a lesser crime which could be found to have been committed on the evidence before the jury." *Gangl v. State*, 539 So. 2d 132, 136 (Miss. 1989).  Such an instruction, however, may only be given when the evidence of record justifies such a finding.

> For purposes of this section, manslaughter shall be considered a lesser included offense of murder and capital murder, and the jury may be properly instructed thereon, upon request by either party or upon the court's own motion, in any case in which the giving of such instruction would be justified by the proof, consistent with the wording of the applicable manslaughter statute.

Miss. Code. Ann. § 99-15-5.

The court finds that the evidence of record did not warrant an instruction on "heat of passion" manslaughter.  Prior to the shooting, Petitioner and Brown had gotten into an argument during which Brown allegedly pulled a gun on Petitioner.  This incident, however, occurred a month before the shooting.  At trial, Michael Smith testified that on the day of the shooting, Petitioner indicated that he felt the victim was mistreating Petitioner's daughter. ([9-3] at 131-32.)  Smith also testified that he saw Petitioner, who was sitting in his Ford SUV, place a handgun in his lap. ([9-3] at 134.)  Oscar Walker testified that he saw Petitioner driving in the area of the shooting ten to fifteen minutes prior to the shooting. ([9-3] at 102-03.)  Walker also testified that he witnessed someone in a "green Expedition, SUV, Explorer one" shoot Brown. ([9-3] at 104.)  Rashad Newton testified that he saw "[Petitioner's] green Expedition pull up and Charles [Brown] jump back, like he was about to get hit, and shots went off." ([9-3] at 151.)

The record demonstrates that Petitioner had the deliberate design to kill Brown. *See*

10

*Hayes v. Anderson*, 2007 WL 1322039, at *5 (N.D. Miss. May 2, 2007) ("The length of time

involved and the petitioner's effort to track down his victim negate the finding of immediacy

necessary to warrant a 'heat of passion' instruction.").  Specifically, the record indicates that

Petitioner drove around Brown's neighborhood with a handgun in his possession, located Brown,

and shot him.  Therefore, the Court cannot conclude that Petitioner's counsel was ineffective for

failing to request an instruction on manslaughter. *See Stewart v. Kelly*, 2006 WL 3918060, at *9

(S.D. Miss. Nov. 17, 2006) ("Failure to request an instruction on a lesser included offense cannot

form the basis for an ineffectiveness claim where the evidence does not support the

instruction.").  Additionally, the Court cannot conclude that Petitioner's counsel was ineffective

for failing to challenge the State's alleged failure to prove malice.

   To the extent Petitioner asserts that counsel failed to conduct an adequate investigation,

the Court finds that this assertion is without merit.  "A defendant who alleges a failure to

investigate on the part of his counsel must allege with specificity what the investigation would

have revealed and how it would have altered the outcome of the trial." *Moawad*, 143 F.3d at 948

(citation omitted).  To prevail on such a claim, Petitioner must provide specific factual support as

to what exculpatory evidence further investigation would have revealed. *Id*.  "Without specific,

affirmative showing of what the missing evidence or testimony would have been, a habeas court

cannot even begin to apply *Strickland*'s standards." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th

Cir. 1994).  It has been routinely recognized that conclusory allegations of ineffective assistance

of counsel claims are insufficient to warrant habeas relief. *Collier v. Cockrell*, 300 F.3d 577, 587

(5th Cir. 2002).

   Petitioner submitted affidavits from Donnie Grindle and David Flowers which state that

11

Petitioner's trial counsel "did no investigation and was not prepared that's why she went with a misidentification defense in which this was not what she discussed with me and my son." ([13-4]; [13-5].)  These affidavits amount to nothing more than conclusory allegations and do not provide "factual support as to what exculpatory evidence further investigation would have revealed." *Moawad*, 143 F.3d at 948.

The Mississippi Supreme Court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Therefore, Petitioner is not entitled to habeas relief on this ground.

*Self-Defense*

In his second allegation of ineffective assistance, Petitioner contends that his trial and appellate counsel were ineffective for there failure to pursue a theory of self-defense.  Self-defnse is defined as follows:

> (1) The killing of a human being by the act, procurement or omission of another shall be justified  in the following cases:
> . . .
>
> (e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises thereof in which such person shall be;
>
> (f) When committed in the lawful defense of one's person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished . . . .

Miss. Code Ann. § 97-3-15.  "A plea of self defense must be supported by evidence of facts and circumstances from which the jury may conclude that a defendant was justified in having

committed the homicide because he was, or had reasonable grounds to believe that he was, in imminent danger of suffering death or great bodily harm at the hands of the person killed." *Wadford v. State*, 385 So. 2d 951, 955 (Miss. 1980).

For his claim to prevail, he must show either his counsel's decision not to pursue a self-defense theory "[f]ell below an objective standard of reasonableness" and that it caused actual prejudice. *Strickland*, 466 U.S. at 688. The record demonstrates that trial and appellate counsel's decision not to pursue a self-defense theory fell well within "the wide range of reasonable professional assistance." *Id*. at 680. As previously explained, the record indicates that Petitioner drove around Brown's neighborhood with a handgun, located an unarmed Brown, and shot him as he was backing away. ([9-3] at 102-04; 131-34; 151.) These facts do not demonstrate that this was a case of self-defense because Petitioner was neither in, nor could have reasonably considered himself, in imminent danger.

Petitioner points to an affidavit from Laura Holmes which states that, earlier on the day of the shooting, she did not see a weapon in Petitioner's possession. ([13-6].) This affidavit does not establish that Petitioner's counsel failed as a constitutional matter to pursue a self-defense theory. "[C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Lovett v. State*, 627 F.2d 706, 708 (5th Cir. 1980).

The Mississippi Supreme Court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Therefore, Petitioner is not entitled to habeas relief on this ground.

*Batson Challenge*

In his third allegation of ineffective assistance, Petitioner argues that his counsel's decision not to raise a *Batson* claim at trial or on appeal equates to ineffective assistance of counsel because the State used peremptory challenges to strike potential jurors of Petitioner's race.  In *Batson v. Kentucky*, the United States Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him protection that a trial by jury is intended to secure." 476 U.S. 79, 85 (1986).

For an ineffective assistance of counsel claim based on failure to make a *Batson* objection, a defendant must prove there exists a valid *Batson* claim.  *Batson* does not imply that striking a member of a petitioner's race automatically qualifies as discrimination.  *Batson* laid out a three-step process for trial courts to determine if peremptory strikes were used discriminatorily or neutrally. *Berry v. State*, 802 So. 2d 1033, 1037-38 (Miss. 2001).  In the first step, a defendant must establish a prima facie case of discrimination during jury selection. *Batson*, 476 U.S. at 106.  To do this, a defendant must show the following:

> (1) that he is a member of cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; (3) and the facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities.

*Lynch v. State*, 877 So. 2d 1254, 1271 (Miss. 2004) (quoting *Snow v. State*, 800 So. 2d 472, 478 (Miss. 2001).

In support of his claim, Petitioner simply states that the prosecutor "used peremptory challenges to strike members of Grindle's race from the jury and failed to provide a sufficient race neutral reason for such action." ([1] at 5.)  Petitioner's claim that his counsel should have raised a *Batson* challenge is fatally conclusory and without merit.  First, "mere cognizance of

14

racial identity does not necessarily establish, or even imply, racial discrimination." *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000). Additionally, "where the only evidence proffered by the defendant is that a black prospective juror was struck, a prima facie *Batson* claim does not arise." *United States v. Branch*, 989 F.2d 752, 755 (5th Cir. 1993). "[A] defendant must prove discrimination by more than the sole fact that the minority venireperson was struck by peremptory challenge." *Id.* Further, showing only that a party used multiple peremptory strikes on minorities does not show discrimination. *See Medellin v. Dretke*, 371 F.3d 270, 278-79 (5th Cir. 2004) (rejecting argument that use of six of thirteen peremptory strikes to excuse minorities "presents statistical evidence of discrimination" and stating that the "number of strikes used to excuse minority . . . pool members is irrelevant on its own.").

Moreover, during Petitioner's trial, the trial judge noted,

> [W]e had, on the panel, 22 females for 49 percent, 15 males for 41 percent. We had 25 caucasians for 68 percent and 13 blacks for 32 percent. Thus, mirroring the composition of this county. And *Batson* did not come up, and I do not think it should have. But I wanted to put that on the record.

([9-2] at 126.)

Petitioner offers no other basis for a *Batson* inquiry other than his assertion that members of his own race were struck from the jury pool. Petitioner has failed to establish that counsel's failure to raise a *Batson* issue falls outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 680. The Mississippi Supreme Court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Therefore, Petitioner is not entitled to habeas relief on this ground.

15

*Cumulative Effect*

In his fourth allegation of ineffective assistance, Petitioner argues that the cumulative effect of his counsel's ineffective assistance deprived him of the right to a fair trial and an effective direct appeal.  An independent cumulative error claim will merit habeas relief where "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process." *Nicholas v. Scott*, 69 F.3d 1255, 1274-75 (1995) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)).  Meritless claims, regardless of the number raised, do not cumulate into one sufficient claim. *Derden*, 978 F.2d at 1454.  Petitioner failed to demonstrate that any of his ineffective assistance claims involved errors of constitutional dimension.  Thus, Petitioner failed to demonstrate that the cumulative effect of his counsel's alleged errors resulted in constitutionally ineffective assistance of counsel.  The Mississippi Supreme Court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Therefore, Petitioner is not entitled to habeas relief on this ground.

**Ground 2: Dying Declaration**

In Ground 2 of his Petition, Petitioner argues that he was denied due process when the trial court admitted the victim's dying declaration.  Specifically, Petitioner complains that the "state was allowed to introduce evidence of declaration of dying victim by using the answers of the police who allegedly took declaration from witness who was only able to nod . . . . [ and who] failed to attach any signature as required by law regarding a dying declaration." ([1] at 6.)

16

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). "Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). A federal habeas court's review of state court evidentiary rulings "is limited to determining whether a trail judge's error is so extreme that it constituted a denial of fundamental fairness" under the Due Process Clause. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

Officer Richard Browning was a responding officer who interviewed Brown in the emergency room. During a hearing on Petitioner's motion to exclude the victim's dying declaration, Officer Browning testified he was familiar with Brown and Grindle from the prior altercation. ([9-2] at 18-19.) Officer Browning testified that Brown was intubated and could not speak, but he was able to ask Brown a series of questions to which Brown responded by nodding his head affirmatively. ([9-2] at 20-22.) The questions were aimed at identifying the shooter. According to Officer Browning, when he asked Brown if Grindle was the person who shot him, Brown emphatically nodded "yes." Shortly after this exchange, Brown died from his wounds. ([9-2] at 21-22.) Following the hearing, the trial court held that the nodding of Brown's head was a dying declaration. ([9-2] at 34.)

During the trial, Officer Browning testified regarding Brown's dying declaration before the jury. ([9-3] at 44-47.) Kayla Breland, an emergency room nurse who treated the victim, also testified. According to Breland, Brown's ability to communicate and control his movements would have been very limited at the time he was being interviewed by Officer Browning. ([9-3]

17

at 69-78.)  Breland, however, also acknowledged that Brown "possibly could have" nodded in

response to questioning and that she did not "remember for 100 percent." ([9-3] at 78.)

In rejecting Petitioner's argument and finding that the trial court did not abuse its

discretion, the court of appeals held that,

> Under Rule 801(a), Brown's responsive nods to Officer Browning's questions were
> "statements."  M.R.E 801(a) (defining "statement" as including "nonverbal conduct
> of a person, if it is intended by the person as an assertion").  And these "statement"
> were indeed "hearsay" because they were offered to prove the truth of what Brown
> had asserted–that Grindle was the shooter.  M.R.E. 801(c) . . . . though Rule 802
> instructs that "[h]earsay is not admissible except as provided by law[,]" Rule 804
> provides several exceptions when the declarant is "unavailable." M.R.E. 802, 804.
>
> Since Brown died shortly after making the statements, he was no doubt
> "unavailable." M.R.E. 804(a)(4).  So Rule 804(b)(2) authorized the judge to admit
> "in [Grindle's] prosecution for homicide . . ., a statement made by [Brown] while
> believing that his death was imminent, concerning the cause or circumstances of
> what he believed to be his impending death." M.R.E. 804(b)(2).[6]

*Grindle*, 134 So. 3d at 338.  Additionally, the court of appeals held that,

> While we recognize portions of Breland's subsequently given testimony about
> Browns' consciousness level perhaps call into question the credibility or reliability
> of Officer Browning's earlier-admitted testimony, Breland's later testimony did not
> negate the fact that the trial judge had already properly admitted the dying
> declaration.  Rather, the the extent discrepancies or inconsistencies exist between
> Officer Browning's and Breland's testimony, they were merely credibility and
> reliability issues for the jury to resolve.  So we are not swayed by his argument that
> the nurse's testimony rendered the earlier testimony concerning Brown's dying
> declaration inadmissible.

*Id.* at 337-38.

---

[6] Mississippi Rule of Evidence 804(b)(2) provides that, "[t]he following are not excluded
by the hearsay rule if the declarant is unavailable as a witness: . . . (2) In a prosecution for
homicide or in a civil action or proceeding, a statement made by a declarant while believing that
his death was imminent, concerning the cause or circumstances of what he believed to be his
impending death."

18

Petitioner has not demonstrated that his trial was rendered "fundamentally unfair" by the admission of the evidence. *See Johnson*, 176 F.3d at 820.  The undersigned finds that Petitioner has not demonstrated that the decision affirming the trial court's ruling on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

**Grounds Not Raised in the Petition**

In Petitioner's Reply [13], he raises a claim based on the Confrontation Clause and raises additional claims of ineffective assistance of counsel.  These claims which were raised for the first time in a reply brief need not he considered. *See United States v. Sangs*, 31 Fed. App'x. 152 (5th Cir. 2001); *see also Mermikwu v. Gonzales*, 2007 WL 530228, at *1 (N.D. Tex. Feb. 21, 2007); *Hopper v. Dretke*, 106 Fed. App'x. 221, 228 n25 (5th Cir. 2004 ) ("In the absence of manifest injustice, this court will not consider arguments raised for the first time in a reply brief.")  Therefore, the Court should not consider these claims.  Notwithstanding Petitioner's failure to raise these claims in his Petition, his claim based on the Confrontation Clause is without merit and he failed to  properly exhaust the additional ineffective assistance claims in state court.

*Confrontation Clause*

Petitioner argues that the admission of Brown's dying declaration violated the confrontation Clause of the Sixth Amendment.  The Sixth Amendment guarantees "[i]n all criminal prosecutions [that] the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" This amendment applies to the states thorough the Fourteenth

19

Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The Confrontation Clause is violated when a "testimonial" statement from an unavailable witness is introduced against a defendant who did not have a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

The Mississippi Court of Appeals found that the Petitioner's Confrontation Clause issue was not properly preserved for appeal. *Grindle*, 134 So. 3d at 341.  The court of appeals, however, reviewed the claim pursuant to the plain-error doctrine because a Confrontation Clause violation would affect a fundamental, substantive right. *Id.*  In rejecting Petitioner's argument, the court of appeals held that although "neither the United States Supreme Court nor our state's high court have spoken definitively on the matter, we are swayed by the United States Supreme Court's commentary in *Crawford* and *Giles* [*v.California*, 554 U.S. 553 (2008)] that, were the matter properly before the Court, the [dying declaration] exception would be held to apply." *Id.* at 343.

Indeed, "the weight of post-*Crawford* authority has read that decision as recognizing a dying declaration exception to the Confrontation Clause." *United States v. Jordan*, 2014 WL 1796698 (D. Colo. May 6, 2010) (citing Peter Nicolas, *I'm Dying to Tell you What Happened: The Admissibility of Testimonial Dying Declarations Post-Crawford*, 37 Hastings Const. L.Q. 487, 492 & n. 24 (Spring 2010)).  The undersigned finds that Petitioner has not demonstrated that the decision affirming the trial court's ruling on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence.  Habeas relief on this claim should be denied.

*Ineffective Assistance of Counsel*

In his Reply [13], Petitioner makes several new allegations of ineffective assistance, including assertions that his counsel (1) failed to object to Jury Instruction 6 which allowed a presumption of malice, (2) failed to object to evidence of Petitioner's separate arrest for possession of a stolen firearm, (3) failed to request that the trial court place on the record three incidents of jury tampering, and (4) failed to object to the prosecutor's comments during closing arguments.  As previously mentioned, Petitioner appealed his conviction to the Mississippi Supreme Court.  In his appeal, he raised many allegations of ineffective assistance, including those just mentioned. ([9-1] at 79; [9-7] at 52-53.)  The court of appeals, however, held that Petitioner's claims of ineffective assistance of counsel were more appropriate for a motion for post-conviction relief because the record was "not as developed as it would be in a post-conviction-relief proceeding." *Grindle*, 134 So. 3d at 350.  Thereafter, Petitioner filed a motion for post-conviction relief but failed to raise any allegations regarding a presumption-of-malice jury instruction, his separate arrest, jury tampering, or the prosecutor's comments during closing arguments. ([9-8] at 3; 48-49.)

"A fundamental prerequisite to federal habeas relief under 28 U.S.C. § 2254 is the exhaustion of all claims in state court under § 2254(b)(1) prior to requesting federal collateral relief." *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)).  The exhaustion doctrine serves the salutory purpose of "giving the state courts the first opportunity to review the federal constitutional issues and to correct any errors made by the trial courts, [and thus] serves to minimize friction between our federal and state systems of justice." *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989) (internal quotations and citations

omitted).

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (citing *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998)). "Fair presentation does not entertain presenting claims 'for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons thereof.'" *Carty v. Thaler*, 583 F.3d 244, 254 (5th Cir. 2009) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). "Not only must the petitioner present the question to the state courts but he must also exhaust all available remedies to procure a correction of the error from the state courts." *Edwards v. Thigpen*, 595 F. Supp. 1271, 1277 (S.D. Miss. 1984) (citing 28 U.S.C. § 2254(b)).

As set forth above, the Mississippi Court of Appeals specifically declined to consider these claims on the basis that ineffective assistance of counsel claims are more appropriately brought in a motion for post-conviction relief. Thereafter, Petitioner failed to raise any allegations regarding a presumption-of-malice jury instruction, his separate arrest, jury tampering, or the prosecutor's comments during closing arguments in his motion of post-conviction relief. Therefore, Petitioner's claims have not been "fairly presented" to the

Mississippi Supreme Court in a "procedurally proper manner," as the state court did not have the opportunity to consider the merits of Petitioner's grounds for relief. *Mercadel*, 179 F.3d at 275. Accordingly, Petitioner has failed to fulfill the exhaustion requirement of 28 U.S.C. § 2254(b)(1) regarding these ineffective assistance of counsel claims first raised in his reply, and these claims should be dismissed. *See Ferguson v. Miss. Dep't. of Corr.*, 2015 WL 3752346 (S.D. Miss. June 16, 2015).

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that the relief sought in Grindle's Petition [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 2nd day of September, 2016.

s/ Michael T. Parker
United States Magistrate Judge